PHILIP J. TORTORELLA & another[1] vs. BOARD OF HEALTH
OF BOURNE & another.[2]

No. 92-P-1748.

Barnstable. January 18, 1994. - September 29, 1995.

Present: ARMSTRONG, BROWN, & LAURENCE, JJ.

*Zoning*, Variance, Wetlands. *State Sanitary Code. Municipal Corporations*, Board of health, Conservation commission.

A board of health properly, within its broad discretion, denied an application for variances from the setback requirements of the State Sanitary Code, Title 5, 310 Code Mass. Regs. § 15.00 (1986), for a septic system, where the board could properly consider the proposed nearly tripling of the habitable space of the house on the lot in question and the planned conversion of the structure from seasonal to year-round use as bearing on the issue of protection of health and the environment and could properly conclude that a variance was warranted only for an upgrade of the septic system to serve the existing house. [280-281]

Property owners seeking, in conjunction with the replacement of the septic system, to replace an existing seasonal dwelling with a year-round dwelling nearly three times larger did not demonstrate that the proposed location of the leaching field complied with the setback requirements of the applicable regulations of the board of health or that they were entitled to a variance therefrom. [282-283]

CIVIL ACTION commenced in the Superior Court Department on March 15, 1991.

The case was heard by *James J. Nixon*, J., on motions for summary judgment.

*Joseph P. Hannon* for the plaintiffs.

*Robert S. Troy*, Town Counsel, for the defendants.

ARMSTRONG, J. The Tortorellas own a 12,200 square foot parcel of land in Bourne, on which they have a small, one-level house of 532 square feet (plus a six-foot by sixteen-foot

---

[1]Deborah Tortorella.
[2]Conservation Commission of Bourne.

front porch). They applied to the town's board of health and its conservation commission for variances to enable them to make substantial improvements, including installation of a septic system (to replace a cesspool on the verge of failing) and an enlargement of the house. The variances were denied, and the Tortorellas bring this appeal from a judgment upholding the denials.

The variances are necessitated by the very small buildable portion of the Tortorellas' lot. Shaped like a long, narrow trapezoid, the lot measures fifty-five feet at the street line, ninety-two feet at the rear, and is roughly 170 feet deep. The rear portion, however, is wetland, beginning roughly sixty feet from the road. The setback requirements of the State Sanitary Code, Title 5 (310 Code Mass. Regs. § 15.03[7] [1986]) and the town's supplementary wetland by-laws pose intractable constraints on construction of a Title 5 septic system within these dimensions. The Code mandates ten-foot setbacks, property line to septic tank, property line to leaching field, and foundation wall to septic tank; twenty feet is required between foundation wall and leaching field. A board of health regulation promulgated in 1988 under G. L. c. 111, § 31 (see note 7, *infra*), prohibits locating leaching facilities within 150 feet of wetland, except upon the grant of a variance. Hydrogeologic studies are a prerequisite for such a variance, and in no case may a leaching field be located within seventy-five feet of wetland "except in cases of repair or extreme hardship."

The Tortorellas' existing house is set back sixteen or seventeen feet from the road (ten feet measured from the porch), and the failing cesspool is directly behind the house, roughly sixteen feet from the wetland boundary. The plan for which the Tortorellas seek approval by way of variances would replace the cesspool behind the house with a septic tank located in the sideyard and a leaching field located in the front yard, almost abutting the road right-of-way. The house itself, which is in a coastal flood plain zone, would be jacked up for the construction of a new, elevated foundation. It would be enlarged to the rear by seven feet, a second story added, and

an L-shaped deck on piers off the new living room on the
south (rear) and east sides of the house. The habitable space,
exclusive of the existing porch in front and the new deck in
the rear, would be increased from 532 square feet to 1456
square feet.

The renovation would require variances from the Code-
mandated setbacks of five feet, side property line to septic
tank; five feet, foundation well to septic tank; eight to nine
feet, front property line to leaching field; and twelve feet,
foundation wall to leaching field. While contending that
Bourne's 150-foot mandated setback from wetland to leach-
ing field did not apply to the work, the Tortorellas applied
for a ninety-nine-foot variance therefrom if the board of
health should disagree.

From the outset, the members of the board of health, ap-
parently without dissent, took the position that, in the inter-
est of moving the waste disposal facilities further from the
wetland, and making them more environmentally functional,
they were willing to grant the needed variances for installa-
tion of the new septic system, but they were unwilling to ac-
commodate the enlargement of the house and its resulting
conversion from seasonal to year-round use. The Tortorellas
made some plan revisions to minimize legal obstacles[3] but in
the end elected to submit a final plan in the form described
above. This the board denied, adhering to their previously
stated unwillingness to see the house enlarged.[4]

---

[3]The principal change was a decision to incorporate the shell of the ex-
isting house into the new construction instead of razing the existing house.
This was presumably an attempt to bring the work within the "existing
dwellings" exception in the local wetland setback by-law (see note 8,
infra).

[4]The board's letter of denial stated, in relevant part:

"While the Board of Health supports the upgrade of the existing
septic system, the Board could not approve the variances since the
plan includes the reconstruction of the existing dwelling with the ad-
dition of a second story and addition to the rear of the dwelling. The
reconstruction/addition would effectively be an increase of 784
square feet of floor space, while the existing house is only 532 square
feet. The Board voted not to approve the variances since the increase
in habitable space includes the potential for increased flows to a sys-

The board's denial of the Title 5 variances was, the Tortorellas contend, an arbitrary misuse of discretion. Starting from the board's expressed willingness to approve the septic system installation by itself, the Tortorellas argue that the board has improperly attempted to use its power to give or withhold the variances to control indirectly two aspects of their over-all plan which are beyond the board's power to control directly: namely, house dimensions and extent of use. Under the Title 5 guidelines, the Tortorellas argue, the amount of a house's habitable space is an irrelevancy; specifications and operational capabilities of a septic system are related only to the number of bedrooms, not habitable space, and the Tortorellas' plan makes no change in the number of bedrooms.[5] As to the denial of the ninety-nine-foot variance from the local wetlands setback, the Tortorellas argue that the setback is inapplicable to their work. To succeed in overturning the board's denial, the Tortorellas must prevail with both arguments, but the judge, correctly, accepted neither.

1. *Title 5 variances.* In support of their first argument — the board's alleged impropriety in considering habitable space, instead of limiting their consideration to the number of bedrooms — the Tortorellas cite only *MacGibbon v. Board of Appeals of Duxbury*, 369 Mass. 512 (1976) (*MacGibbon III*). There, the plaintiff, who sought a permit to excavate and fill coastal marshlands, was denied a permit on the ground that the resulting dry land would not be suitable for residential construction and the installation of cesspools or septic systems. See *MacGibbon v. Board of Appeals of Duxbury*, 347 Mass. 690, 691-692 (1964) (*MacGibbon I*).

tem which cannot meet the requirements of Title 5 or the local Board of Health setback to wetlands regulation, and since [the Tortorellas' attorney] spoke of an upgrade of the existing heating system in a dwelling which has been represented to this Board previously as seasonal and non-winterized at this time."

[5]The existing room pattern is to be revised in toto by the destruction and reconstruction of all interior walls. The two existing, tiny, ground-floor bedrooms are to be replaced by two very substantially larger second-floor bedrooms, with ample storage space and a more spacious bathroom than at present. The enlarged downstairs is to have an expanded living room and kitchen and a new dining room, a new laundry room, and a lavatory.

This was held to be an improper reason for denial of a permit to excavate and fill, as contrasted with, for example, a building permit. The land, the court reasoned, could be used for agriculture or recreation. The *MacGibbon* cases have no application here. While the Sanitary Code employs a number-of-bedrooms measure for determining the necessary operational specifications of a septic system, other factors that are relevant to potential demands on the system are properly considered by the board in deciding whether to grant a variance. The proposed system, after all, while an improvement on the existing cesspool, will not be in conformity with Title 5, if only due to major noncompliances with setbacks. The doubling — almost tripling — of habitable space and the planned conversion to year-round living both suggest the potential for significant expansion of actual use of the system. Variances from Title 5 requirements are authorized, but not required, when, "in [the] opinion [of the board of health] (1) the enforcement thereof would do manifest injustice; and (2) the applicant has proved that the same degree of environmental protection required under this Title can be achieved without strict application of the particular provision." 310 Code Mass. Regs. § 15.20 (1986). Title 5's variance provision has been said to "give[ ] broad discretion to the board based on the strong public interest in protecting health and the environment." *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 627 (1989). In exercising its broad discretion, the board properly may consider any factors bearing rationally on the actual demands that may be put on the system and the environment. A year-round house with ample room for guests can reasonably be expected to generate over the long haul more sewage than a tiny cottage used only seasonally. The board could properly conclude, as it did, that the manifest injustice standard warranted a variance for upgrading the septic system to serve the existing house only. Given its paramount obligation to protect the environment, it was not unreasonable for the board to deny the variances as an adjunct of major residential construction at the wetland's edge.

2. *Local wetlands setback.* Title 5 establishes a minimum fifty-foot setback from wetland to leaching field (310 Code Mass. Regs. § 15.03[7]), but municipalities are permitted to establish more stringent setbacks. *T.D.J. Dev. Corp.* v. *Conservation Commn. of North Andover*, 36 Mass. App. Ct. 124, 125-126 (1994). Supplemental to a wetlands by-law generally providing for a 150-foot setback (see note 7, *infra*), the board of health promulgated two regulations, one of which precludes alteration, conversion, or repair of buildings unless the septic system complies with or can be upgraded to comply with Title 5 standards.[6] The other establishes a general 150-foot setback of leaching fields from wetlands boundaries, permits variances up to seventy-five feet therefrom, and greater variances "in cases of repair or extreme hardship."[7] ("Extreme hardship" is defined as loss of or damage to a septic system or the structure it serves due to fire, flood, act of nature, or land taking.)

The Tortorellas argue that the first of these regulations implicitly provides that alteration, conversion, or repair of

---

[6]The regulation, adopted in 1983, reads:

"No building within the Town of Bourne shall be converted or altered or repaired so as to enable its use year round nor shall its use be changed unless the present existing septic system complies with requirements of Title 5, 310 CMR 15.00, or the system can be upgraded to comply with Title 5. In addition, no building shall be remodeled, replaced or altered in any manner unless said septic system complies with Title 5, 310 CMR 15.00, or written approval is obtained from the Board of Health."

[7]In relevant part the regulation, adopted in 1988, reads:

"[A] 150 foot setback will be required for all leaching facilities from the edge of a wetland resource or watercourse, as defined in 310 CMR 15.01 Title V. Setback distance shall be measured during periods of highest ground or surface water conditions. The Board of Health may grant a variance from the 150 foot setback requirement, based upon satisfactory documentation prepared by a hydrogeologist or professional sanitary engineer. In addition, a hydrogeologic study, prepared by a hydrogeologist or professional sanitary engineer, will be required by the Board of Health for all leaching facilities within 100 feet of a wetland or watercourse, as defined by 310 CMR 15.01, Title V. In no case shall a septic system leaching facility be placed within 75 feet of a wetland or watercourse, except in cases of repair or extreme hardship."

existing buildings, such as their house, shall not be subject to controls more stringent than those of Title 5, with the result that their proposed system, being outside (by one foot) of Title 5's mandatory setback, is not subject to the local 150-foot setback. The construction is strained beyond the breaking point. Our reading of the Code leads us to an almost directly opposite conclusion: that stricter local requirements are treated as Title 5 requirements for purposes of the administration of the Code. *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. at 624-626, and particularly 625 n.7. See, e.g., 310 Code Mass. Regs. § 10.03(3) (1986). Thus the regulation requires compliance with both the Title 5 minimum requirements and the stricter local requirements. The Tortorellas next argue that, because they have an existing cesspool, their substitution of a septic system constitutes a "repair" within the meaning of the second board regulation (note 7, *supra*), but that reading, even if accepted (the judge did not accept it), does nothing to obviate the need for a variance. Nor can the Tortorellas find assistance in the Bourne wetlands by-law provision[8] generally exempting "existing dwellings" from the 150-foot setback. The board and the judge could properly treat the Tortorellas' proposed construction as involving what is in effect a new dwelling, replacing the existing dwelling, although incorporating its shell.

What has been said in effect disposes of the issues raised by the Tortorellas against the decisions of the conservation commission and the Department of Environmental Protec-

---

[8]The local wetlands by-laws, in relevant part, states:

"Article 4.7 Construction in Wetland Resource Area. Section 4.7.1 No Construction Within 50 Feet. No habitable dwellings, or accessories thereto, shall be permitted within 50 feet of any wetland resource area (wetland resource area being defined as inland and coastal wetland areas, water, and adjoining land areas). This provision shall not apply to previously existing dwellings or proposed additions thereto: boatyards, marinas, or other water dependent uses; docks, piers, floats or other uninhabitable structures; or, buildings used for the purposes of agriculture."

"Adjoining land area" refers to a buffer zone of one hundred feet measured from wetland.

tion. These approved the proposed new construction, with the exception of the new rear deck, subject to the Tortorellas' obtaining the required variances from the board of health.[9] The rear deck involves the deepest intrusion into the wetland resource area (see note 8, *supra*), and denial of a permit therefor is well within the commission's and the department's discretionary authority. To the extent that the last count of the amended complaint raises additional issues, those issues have not been argued within the meaning of Mass.R.A.P. 16(a) (4), as amended by 367 Mass. 921 (1975).

*Judgment affirmed.*

---

[9]In its decision the conservation commission stated that its action "should NOT be construed as an endorsement of the project . . . . To the contrary, the Bourne Conservation Commission is not in favor of the Bourne Board of Health issuing any variances on this project. The Commission is very concerned that the increase in habitable space may cause septic system problems that will eventually cause adverse water quality and wetland impacts."